Our next case this morning is No. 241429, Borovicka v. United States. Okay, Ms. Mesumdar, or Ms. Chambers. Yes. Good morning, Your Honors. My name is Anita Chambers, and I represent Appellant Megan Borovicka. May it please the Court. Ms. Borovicka asked that this Court reverse the lower court's decision related to her Equal Pay Act claim. The Court need not address the Prima Fascia case as the FDIC waived that argument in lower briefing, and the lower court agreed that the Prima Fascia case has been waived. So before the Court is the affirmative defense under the Equal Pay Act. Simply put, the FDIC cannot meet its heavy burden to establish an affirmative defense. Critically, a plausible explanation is not sufficient. This is not a Title VII case. This is not a burden of production. This is the Equal Pay Act with a different standard for the affirmative defense. In Mickelson v. New York Life Insurance, the Tenth Circuit explained that the Equal Pay Act requires an employer to submit evidence for which a reasonable fact finder could conclude not merely that the employer's pro-offered reasons could explain the wage disparity, but that the pro-offered reasons do in fact explain the pay disparity. And the Court further explained that because it is the employer's burden, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary. So they said it was for reasons other than sex. And they put in declarations and evidence with regard to the hiring process and regard to Mr. Pitt, who's not the comparator. He's not, I guess, but whatever. I'm unclear why that's insufficient. I mean, I agree with you. This probably should have come up in the prima facie case, as Judge Bonilla pointed out, but it didn't. So you got it. But I don't know why this wasn't sufficient. The reasons presented weren't sufficient to establish other than sex. Well, Your Honor, let me address Dwayne Pitt, since you raised him. First, Dwayne Pitt should not even be in the discussion at this affirmative defense stage. Again, we're past the prima facie stage. And also, Dwayne Pitt was not offered as a comparator for Borovitska. This was something that the judge selected, and that is something that the Court is not allowed to do under the Cook case. The Court must only consider the comparator from Ms. Borovitska. And again, past the prima facie case, so that should not even be in question. A few more points. Do you have any cases, or can you cite some cases in that regard? You're saying that the comparator cannot be submitted by the Board. It's got to be by the parties. Yes. That is the Cook case, Your Honor. I can get you the site. It was before this Court. Marcia Cook. Cook v. United States, 85, Federal Claims, 325, 2008. And that stands for the proposition that the comparator should only be, the only comparators that should be used are from Ms. Borovitska, not the defendant, and certainly not the lower court. Back to some of your... Is it also the case that arguments concerning comparators, the dueling arguments between the claimant and the Board, that they can only be made in a prima facie aspect of the proceeding? Yes, Your Honor. I agree. The analysis of comparators should only be used in the prima facie case, and we don't even need to review that in this case, because the FDIC waived that argument. The Court agrees with that. So the fact that one alleged comparator, who Borovitska did not even identify as a comparator, is being used in the affirmative defense. So who did she identify as a comparator? Well, again, Your Honor, she identified ten other comparators in her complaint. But we don't even need to, males who earned higher pay than she did at the FDIC, but we're past the prima facie case, so we don't even need to go into the comparators. We're at the stage where the FDIC needs to provide an affirmative defense as to the reasons why ten or more males at the FDIC were paid at a higher rate. I mean, and the theory was it was a feature other than sex, because these other people had federal experience that she didn't have. Yes, Your Honor, on the prior federal experience, there's a number of problems with that. First is that that just simply can't be true, because Dwayne Pitt, for example, had a lot of prior federal experience, but he was not paid as much as some of the other individuals cited in the case. Second, there's no policy, there's nothing in the record, there's nothing in the deposition testimony, there's no policies about what is prior federal experience. The directive, which is in the appendix, that was in effect upon hiring, talks about relevant experience. Now, the FDIC has made this into federal sector experience, but there's nothing that explains what is federal sector experience, what's the criteria that is used to evaluate federal sector experience. And if we look at the time of when the FDIC issued Ms. Boravichka her pay, and the emails between the decision makers in HR, and that there's three, maybe less than five, I can give those to the court, that's appendix 935, 854, and 865, there is no reference there to federal sector experience. Now, there is reference to federal sector experience in EO affidavits, which happen months afterwards, once Ms. Boravichka filed. But there's no dispute that's what the job was supposed to be, right? Right, there's no dispute. There's no dispute that your client didn't have any experience in federal sector labor issues, and that the other candidates did. Well, I would somewhat disagree with that, because Ms. Boravichka worked at a private law firm doing employment law. She was not a federal government employee, but she was doing employment law under the same statutes in the private sector as she was in the federal sector. I mean, I'm burdened with some experience as a labor lawyer in one of my careers, and there's a difference. I mean, I guess private firms might have engaged federal employees to do that, but I don't think there's any indication in the record that we were dealing with other than private sector labor law, which is not the same statute as federal sector. There are some differences, for sure, like the ADA versus the Rehab Act, that might apply to federal employees, but for example, Title VII and its application in the case law, there's a lot of overlap. And you're right that she did not previously work for the government. She worked in a private law firm doing employment law. Again, though, that defense does not work, because if federal sector experience really was something that the FDIC values and that's why they pay certain employees more, they would have paid Dwayne Pitt more, because all of his experience was related to federal sector. I mean, the lower court judge in oral argument made that same point. So it just simply does not hold up that it was because of federal sector experience. And if you look at the appendix of the emails between the decision makers when they're deciding how much to pay... I mean, as a legal matter, the fact that Pitt was treated differently means that they can't rely on federal sector experience? I don't quite follow that. Well, I'm saying that the argument of federal sector experience as being an affirmative defense is really not supported in the record. Dwayne Pitt is one example of that, because if this was a true policy of the FDIC that it administers equally to all employees, then it would have paid Dwayne Pitt more, because he has a lot of federal experience. And they would have paid him more than, for example, Sam Brooks, but they didn't. And again, we're talking about Dwayne Pitt, but I would argue that that shouldn't even be argued at this point. Additionally, there are certain pay-setting directives that are in the record. There's the directive, the circular 2220. And that talks about prior pay. And it talks about relevant experience, but again, nothing about prior federal experience. Judge Gross, did I address your questions? So, going back, the burden here is that the FDIC has to show that it's not that something could have explained the wage disparity, it's that it did in fact explain the wage disparity. And the FDIC's argument about prior federal experience simply do not meet that heavy burden. And if we look in the record, there's a lot of documentation and there's a lot of policies and various procedures and guidelines that the FDIC has submitted, but those are really all after the fact. So if we really look at the emails with HR, there's an email from HR among the HR department where the HR representative looked at the policy that was in place, the directive, and found that the FDIC could have paid Ms. Vorovichka a higher amount without having to request a pay exception to kind of match her or get near to her prior salary. And so the HR representative sent that to the decision makers. And then there's no discussion in emails, there's deposition testimony that there was no meetings about what happened or the decision makers reviewing any other policies. And so the FDIC could have easily placed Ms. Vorovichka at a higher pay rate, but it did not. And there's nothing in the contemporaneous record that talks about prior federal experience with Duane Pitt. I will admit that later on in the EEO proceedings and affidavits that is in there along with a lot of other arguments that the FDIC later came up with. But because this is the EPA, because of the heavy burden of the affirmative defense, the analysis should stop there that the FDIC did not meet its burden. Happy to answer any other. May it please the Court. May it please the Court. After two years of discovery at the agency level and trial court since this case began in 2021, nothing has changed. Ms. Vorovichka fails to rebut the FDIC's ample showing that gender neutral factors under its case setting policy caused differences in pay. I'm just not clear of how this went down. In her prima facie case, she's supposed to establish comparators. And she identified comparators, and the government didn't challenge those comparators, didn't challenge her inability rank. So where does that leave you in terms of your burden than otherwise? Do you have to go through every other everyone she alleged was a comparator and show that the differences were for reasons other than sex? Or why are we left with just Mr. Pitt? Your Honor, we are not just left with Mr. Pitt, and comparator is a term of art where Mr. Pitt's pay, not himself, is not being shown to exclude Ms. Vorovichka's comparators, but is being shown to explain that in light of her comparators, that it is highly relevant. His comparable pay is highly relevant to the government's affirmative defense. And that explains differences in pay with her alleged comparators. And it's highly relevant for four reasons. Because first, the same hiring managers affirmatively considered Mr. Pitt's pay when considering Ms. Vorovichka's final offer. Second, Mr. Pitt's pay was just set a month prior. Third, both were hired into the same Labor and Employment Administration section, or LEES for short, field unit counsel position. And fourth, the hiring managers sought to avoid a huge disparity of their starting salaries. And in fact determined that $10 above... Counselor, when you consider the structure of the Equal Pay Act and, for example, also in the county of Washington versus Gunter that discusses the codified exceptions, the four codified exceptions that the government assumes, right? The burden passes to the government if there's a promulgation case. The burden now passes to the government, and they have four exceptions to meet their burden. That's correct, Your Honor. The government has... involved analysis of a comparator. Right. As this Court most recently explained in Boyer, all that is required under the catch-all fourth exception is a differential based on any other factor other than sex. And that entails showing first the existence of an alleged other factor, and that that factor must, as a factual matter, show that it is other than sex. And those factors here are not only prior pay, but relevant employment history, federal sector experience, and, as a trial court, correctly determined, critically, the base salary of a recent hire into an identical role. That recent hire was Duane Pitt. This is supported by affidavits of hiring managers Christine Escobar and Judith Thompson, deposition testimony of the hiring manager Thompson, deposition testimony of the human resource specialist Diane McKee, contemporaneous emails amongst human resources personnel, and contemporaneous emails between human resources personnel and hiring managers. As such, both Ms. Borowiczka and Mr. Pitt's pay, regardless of gender, were set at the low but appropriate and permissible range for the corporate grade 15 counsel position. Gender neutral factors under FDIC's pay setting policy indeed explain why Ms. Borowiczka's pay was higher than Mr. Pitt's, but lower than her alleged comparators. This is because, beyond a candidate's highest prior pay, the FDIC values federal sector experience. And Ms. Borowiczka had very little, if not none, despite her high law firm salary and private sector experience. As a leased field unit counsel, the job posting indicated Ms. Borowiczka was expected to provide expert advice on federal... Her experience, now, was that before the federal employment statutes? Her experience was only in the private sector. I understand that, but she was she practiced law in the private sector in the employment field. Yes, that is correct. And that was taken account for and credited for. What I'm asking is, was her practice before state courts or was it before federal agencies? She testified in her deposition, Judge Reyna, that she had no experience before the MSPB and the FLAA, and her EEOC experience was limited to... I guess what I'm trying to get at is she had significant experience in the private sector representing clients before the federal agencies on employment matters. So she had experience in a field related to the field involved in the case. That's under the Equal Pay Act. So what I'm asking is was... Was her experience found to have been restricted because she was an employment attorney in private practice and did she practice before federal agencies? It was not restricted, and her experience was very little in terms of experience before the relevant job description that was required of her, which was to practice before the FLAA, the EEOC, the MSPB. The 30b-6 witness, Eric Gold, even testified that most of the counsel in Lee's have cases that are before these federal agency bodies like the MSPB or the EEOC. But she even testified in her deposition that her EEOC experience was limited to about 10 cases on behalf of companies, of which the complaints were either dropped or resolved short of a hearing, and she had no federal government experience except the summer college internship at the White House. Due to her lack of experience, one of the hiring managers who interviewed Ms. Borovitska and reviewed her written application stated in a contemporaneous email to the hiring manager, Estevar, quote, In my 25 years in this section, we have never selected an external candidate who has not had experience in federal sector labor and employment, EEO, at any level, end quote, and that Ms. Borovitska, quote, did not appear knowledgeable at all about such basics as FLRA and MSPB, end quote. As a result, the hiring manager strongly recommended against selecting Ms. Borovitska over another candidate. As a matter of fact, Ms. Borovitska has less federal sector experience than all of her alleged competitors. This is reported by the answer to the complaint, responses to her interrogatories, standard form 50s of the competitors, which reflect their length of their federal service, the detailed review by the trial court of Ms. Borovitska's alleged competitor, Samuel Brooks, through his pay exception memo, which also shows that the mean length of federal service in 2016 amongst Lee's counsel was 14 years, and importantly, Ms. Borovitska's lack of federal sector experience compared to her alleged competitors was uncontroverted below. Instead, to rebut the FDIC's affirmative defense, Ms. Borovitska argued pretext in the form of contradictory testimony and shifting explanations, and now on appeal adds post hoc rationalization and pretext in the form of three sexist comments allegedly made by the hiring manager, Ms. Espevar. But the trial court exhaustively considered all of these arguments to include a three and a half hour marathon session oral argument, and again upon Ms. Borovitska's motion for reconsideration, and found these arguments meriless and unsupported by actual evidence. In the end, Ms. Borovitska failed to rebut the FDIC's affirmative defense, and Judge Bonilla at the trial court clarified that he did not consider evidence with regard to the distinction between the headquarters and field unit offices, that that was neither determinative or material in his decision. As such, all of these arguments were considered. Borovitska lacked federal sector experience, and due to her lack of federal sector experience, among other gender-neutral factors, to include her prior pay and to avoid a huge disparity with a recent hire and to an identical role, her pay was set at the low but appropriate and permissible range pursuant to the FDIC's gender-neutral pay setting policy. Gender-neutral factors, in fact, explain differences in pay. This court should therefore affirm the trial court's decision. Okay. Thank you, Ms. Chambers. Counsel raises the issue about the timing of a recent hire, saying that Duane Pitt was recently hired before Ms. Borovitska. This is really again an argument that does not work. Antonia White is another FDIC employee who was hired seven months later and was given a base salary of over $10,000 more. The FDIC's position that because someone was recently hired, it happens to be Duane Pitt, we're going to tether Ms. Borovitska's pay to Duane Pitt just simply doesn't make sense because the FDIC is doing they're applying its policies to the advantage of males. When a male needs to match his hire previous pay, it will use the directive the 2220. When Ms. Borovitska is trying to explain that she made a lot more in the private sector, it does not do that. It provides her $10,000 more than the base. Again, this is an example for Antonia White. There's nothing in the record. First, there's no policy that says that the timing of when someone's hired should dictate your pay. It's just not in the record. Further, there's no emails. There's no deposition testimony about the timing or about Antonia White being hired and his salary being looked at in terms of timing for Borovitska or Duane Pitt. That argument is just something that the FDIC has come up with in litigation. It's not what was actually used in setting base pay. I won't belabor the point on Duane Pitt, but I just want to emphasize that under Cook shouldn't even be discussing Duane Pitt. The FDIC's argument cannot be that Duane Pitt won a person as a comparator, and that should be used through the entire case. We've passed the Prima Fascia case, and it's just simply not a relevant analysis. Again, with federal experiences, I've made the point before, if it really was that federal experience was some policy or some metric that the FDIC cared so much about that it applied to all of its employees, we would see that in some kind of policy or criteria or notes or the emails among the decision makers. None of that is there, so I invite you to look back on the record on 935, 854, and 865. It's simply not referenced. And further, if it really were federal experience, then Duane Pitt would have been paid more than other comparators. And then in terms of federal sector experience, the FDIC itself cannot explain what it means by federal sector experience. That's because it's not in their policy. In the directive, it is simply about relevant experience. And so the decision makers aren't even aware about exactly what Ms. Boravichka did, what her involvement was, the fact that she did file with the EEOC, a federal agency, and there's no scale or criteria of if that is sufficient. In sum, the FDIC does not meet its heavy burden on the affirmative defense. We don't even need to go to the pretext analysis when all the, what counsel has referred to as testimony and other policies, that was all after the fact. That was after Ms. Boravichka had actually approached the FDIC and Ms. Boravichka submitted a declaration where she asked the FDIC why is my pay lower than males? She said, we don't know. And the only policy they pointed to was Directive 2220.1 that was effective at that point, which should have matched her pay to her previous pay. That was the only thing at the time. Later through the EEOC and through the various years of litigation, the FDIC has come up with guidelines, different factors, things that HR admits in its deposition that it did not, doesn't recall if it got training on, doesn't recall if it received. There is testimony that the two decision makers, Christine Savar and Judith Thompson, did not review any documents or policies and procedures in setting Boravichka's base pay. And there is testimony from... Okay. Thank you.